# NOCKAMIXON TOWNSHIP

v.

# NOCKAMIXON TOWNSHIP ZONING HEARING BOARD.

**Hanson Aggregates, BMC, Inc., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 14, 2010.
Decided Nov. 18, 2010.

---

John A. VanLuvanee and Kellie A. McGowan, Doylestown, for appellant.

Jordan B. Yeager, Doylestown, for appellee.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Hanson Aggregates, BMC, Inc. (Hanson) appeals the May 3, 2010 order of the Court of Common Pleas of Bucks County (trial court) reversing the decision of the Nockamixon Township Zoning Hearing Board (ZHB), thereby dismissing Hanson's procedural challenges to the zoning ordinances of Nockamixon Township (Township), a township of the Second Class. The issues before us are: (1) whether the trial court erred as a matter of law when it reversed the ZHB's decision that specified ordinances of 1968 and 1990 failed to comply with mandatory statutory procedures for enactment of zoning ordinances; (2) whether the procedural defects in enactment of the 1968 and 1990 ordinances were of the type that implicated "notice, due process or other constitutional rights," rendering them void *ab initio*; and, (3) whether evidence of notice, acquiescence or reliance is relevant to a procedural challenge to the validity of a zoning ordinance alleging that the challenged ordinance is void *ab initio*. For the following reasons, we affirm the decision of the trial court.

Hanson is the owner of two contiguous parcels of real estate (Parcels 30–11–101 and 30–11–100) consisting of approximately 103 acres located on Route 611 at Quarry Road in the Township, in Bucks County. Hanson operates a quarry on Parcel No. 30–11–101, which is located in the Quarry Zoning District pursuant to the Township's 1990 Zoning Ordinance (1990 Ordinance). Parcel No. 30–11–100, which is vacant, is located in the Commercial Zoning District pursuant to the 1990 Ordinance.

On or about February 25, 2008 (and as amended in August of 2009), Hanson filed a procedural challenge to the validity of the following Township ordinances,[1] claiming they are void *ab initio* because they were improperly enacted by the Township:

Ordinance 18—enacted by the Township's Board of Supervisors on September 30, 1968 (1968 Ordinance);

Ordinance 56—enacted by the Township's Board of Supervisors on December 28, 1989 (1990 Ordinance)—replacing the 1968 Ordinance;

Ordinance 101—enacted by the Board of Supervisors on January 9, 2001 (2001 Codification)—codifying all of the Township's ordinances.

Public hearings were held before the ZHB relative to Hanson's challenges on April 17, 2008, May 15, 2008, June 26, 2008, August 7, 2008, September 4, 2008 and October 16, 2008. On February 19, 2009, the ZHB voted (2 to 1) in favor of sustaining Hanson's challenge and, on March 23, 2009, the ZHB issued a written decision declaring the 1968, 1990 and 2001 Ordinances null and void *ab initio*, meaning that there were no longer lawful, valid or effective rules, regulations or ordinances governing zoning and/or land use in

---

1. At the June 26, 2008 hearing before the ZHB, Hanson withdrew its challenge to Ordinance 35—enacted by the Township's Board of Supervisors on December 11, 1984 (Quarry Ordinance)—creating the quarry zoning district. Reproduced Record (R.R.) at 86a.

the Township. The Township appealed the ZHB's decision to the trial court. On May 3, 2010, based upon the record produced before the ZHB, the trial court reversed the ZHB's decision, thereby dismissing Hanson's challenges and leaving the Township's ordinances in full force and effect. Hanson filed an appeal to this Court.[2]

Hanson first argues on appeal that the trial court erred by finding that the Township published summaries of the provisions of the proposed 1968 Ordinance in accordance with Section 2004 of The Second Class Township Code (Code),[3] and of the 1990 Ordinance in accordance with Section 610 of the Pennsylvania Municipalities Planning Code (MPC).[4] We disagree.

### 1968 Ordinance

Section 2004 of the Code, in effect at the time the 1968 Ordinance was proposed, stated:

> The supervisors shall exercise the powers granted in section 2001 hereof, by ordinance, which shall provide ... for at least one week and not more than three weeks prior to the presentation of the proposed ordinance, a notice of intention to consider such proposed ordinance and *a brief summary* setting forth the principal provisions of the proposed ordinance, in such reasonable detail as will give adequate notice of its contents, and a reference to the place or places within the township where copies of the proposed ordinance may be examined....

> The provisions of the ordinance need not be advertised or recorded as in other cases....

(Emphasis added). The 1968 Ordinance was purportedly enacted on September 30, 1968. Notices published on August 30 and 31, 1968 about a planning commission meeting contained statements that copies of the proposed ordinance would be available for public inspection by area residents. Reproduced Record (R.R.) at 52a–56a. On September 16, 1968, a public notice was issued stating:

> [T]he zoning ordinance will be available for inspection several evenings before a public meeting is called. Legal technicalities are now being taken care of and the ordinance will be advertised as soon as possible. The date of the public meeting and times of inspection will be announced at that time.

R.R. at 58a–60a. A September 18, 1968 notice further stated:

> Nockamixon Township Board of Supervisors has called a special meeting at 8:00 p.m. Monday, Sept. 30 for the adoption of a zoning ordinance for the township.... The board will consider for adoption the establishment of districts and boundaries through a Zoning Map.

> The purpose of the proposed zoning ordinance and accompanying zoning map is to promote the health, safety, morals and general welfare of the citizens of Nockamixon Township. Copies of both may be examined at the Nockamixon

---

2. "Where the trial court took no additional evidence, we are limited to determining whether the zoning hearing board abused its discretion or committed an error of law. An abuse of discretion occurs where substantial evidence does not support the board's findings." *In re McGlynn (McGlynn)*, 974 A.2d 525, 530 n. 4 (Pa.Cmwlth.2009) (citation omitted).

3. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 67004, repealed by the Act of July 31, 1968, P.L. 805. Despite the fact of its repeal before the notices were published, neither the parties, the ZHB or the trial court raised the repeal as an issue, perhaps since the ordinance was proposed before that date.

4. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10610.

Township Building, Ferndale Sept. 23, 24, 25 and 26 from 8 to 10 p.m.

R.R. at 61a–63a. The September 19–20, 1968 notice stated:

Notice is hereby given in accordance with the applicable provisions of the Act of May 1, 1933, P.L. 103, as amended, of the intention of the Board of Supervisors of Nockamixon Township, Bucks County, Pennsylvania, to consider at a special meeting to be held on Monday, September 30, 1968, the adoption of a Zoning Ordinance for said Township. The Board will also consider for adoption the establishment of districts and boundaries through a Zoning Map. The special public meeting will be held on Monday, September 30, 1968 at 8:00 o'clock P.M. in the auditorium of Palisades High School, R.D. 31, Kintnersville, Pa.

The purpose of the proposed Zoning Ordinance and accompanying Zoning Map is to promote the health, safety, morals and general welfare of the citizens of Nockamixon Township. The Zoning proposes to regulate and restrict facilities and services in and about buildings and structure as well as use the buildings, structures and land for trade, industry, residence and other purposes. The Ordinance also contains provisions to regulate and restrict the size of yards, courts, building lots, and other open spaces and the use of land for trade, industry, residence and other purposes. Copies of the proposed Zoning Ordinance and Zoning Map may be examined at Nockamixon Township Building, Ferndale, Pa. on September 23, 24, 25 and 26 between the hours of 8 and to 10 P.M.

R.R. at 67a–68a. The September 20, 1968 notice further stated: "The proposed zoning ordinance of Nockamixon Township may be examined from 8–10 p.m. Monday through Thursday at the township building in Ferndale. The ordinance will be up for adoption at a special meeting to be held at Palisades High School at 8 p.m. Sept. 30." R.R. at 66a.

█ In most instances, the public notices referenced no more than that the ZHB will consider a zoning ordinance and that the ordinance is available for public inspection. They provided little or no detail affording the public "adequate notice" of the contents of the proposed ordinance. The September 19–20, 1968 notice, however, clearly supplied a "brief summary" of the ordinance's provisions, such that the public had adequate notice of them. Therefore, the ZHB erred by finding that the Township's notice of the proposed ordinance failed to comply with Section 2004 of the Code.[5]

The trial court reversed the ZHB's determination on this point because it determined that Section 2004 does not require publication of a brief summary. A strict reading of Section 2004, however, reveals that the Township's Board of Supervisors "shall" provide a notice of intention to consider an ordinance, a brief summary thereof, and reference to a place that the public can review it. While the specific provisions of the proposed ordinance need not be advertised or recorded in advance, notice containing a brief summary is clearly mandated by Section 2004. Therefore, while this Court affirms the reversal of the ZHB's determination, we do so on the grounds that a proper summary was published on September 19–20, 1968, rather

5. As will be addressed below, however, we conclude that there was a timeliness violation with respect to Section 2002(b) of the Code.

than because Section 2004 does not require publication.

### 1990 Ordinance

■ Section 610(a) of the MPC, 53 P.S. § 10610(a), states:

(a) Proposed zoning ordinances and amendments shall not be enacted unless notice of proposed enactment is given in the manner set forth in this section, and shall include the time and place of the meeting at which passage will be considered, a reference to a place within the municipality where copies of the proposed ordinance or amendment may be examined without charge or obtained for a charge not greater than the cost thereof. The governing body shall publish the proposed ordinance or amendment once in one newspaper of general circulation in the municipality not more than 60 days nor less than 7 days prior to passage. Publication of the proposed ordinance or amendment shall include either the full text thereof or the title and a *brief summary*, prepared by the municipal solicitor and setting forth all the provisions in reasonable detail. If the full text is not included:

(1) A copy thereof shall be supplied to a newspaper of general circulation in the municipality at the time the public notice is published.

(2) An attested copy of the proposed ordinance shall be filed in the county law library or other county office designated by the county commissioners, who may impose a fee no greater than that necessary to cover the actual costs of storing said ordinances.

(Emphasis added). The 1990 ordinance was purportedly enacted on December 28, 1989. Notice that the Board of Supervisors was going to hold a public hearing on December 13, 1989 to inform the public about the proposed ordinance was published on December 6, 1989, but did not summarize the ordinance in any way. R.R. at 71a–72a. Notice published on December 20, 1989 merely set the date of the next meeting for December 28, 1989. R.R. at 65a. Notice published on December 21, 1989, however, stated that the Board of Supervisors would hold a hearing on December 28, 1989 to consider adoption of the ordinance to replace the 1968 Ordinance, and then extensively listed the provisions proposed for the new ordinance. R.R. at 64a. Since it is clear that a timely notice containing a brief summary of the 1990 Ordinance was made, the Township complied with Section 610(a) of the MPC. Therefore, the ZHB properly concluded the December 21, 1989 notice satisfied the requirements of Section 610(a) of the MPC, and the trial court properly agreed.

■ Hanson also argues on appeal that the trial court erred in concluding that the failure by the Township to provide timely notice of the 1968 Ordinance, and its failure to record the 1990 Ordinance were not defects implicating due process. Although there is no merit to Hanson's claims that the Township failed to publish brief summaries of the provisions of the proposed 1968 and 1990 Ordinances, the Township did violate Section 2001 of Code, 53 P.S. § 67001,[6] by not providing timely notice of the meeting at which the 1968 Ordinance was considered, and Section 1741 of the Code, 53 P.S. § 65741,[7] by not properly

---

**6.** Section 2001 was repealed by the Act of July 21, 1968, P.L. 805. Despite the fact of its repeal before the notices were published, neither the parties, the ZHB or the trial court raised the repeal as an issue, perhaps since the ordinance was proposed before that date.

**7.** Repealed by the Act of November 9, 1995, P.L. 350. It has been recodified as Section 1601 of the Code, 53 P.S. § 66601.

recording the 1990 Ordinance in its official ordinance book.

It is undisputed that the Township violated Section 2001 of the Code because it failed to provide timely notice of the meeting at which the 1968 Ordinance was considered. Section 2001 of the Code in effect at the time the 1968 Ordinance was proposed, authorized the Township to adopt and enforce zoning ordinances and to divide the Township into zoning districts. Section 2002(b) of the Code, 53 P.S. § 67002(b),[8] required the Township to "provide, by ordinance, the manner in which the boundaries of such districts shall be determined," but that:

[n]o such boundary shall become effective until after public hearing in relation thereto at which parties in interest and citizens shall have an opportunity to be heard. At least 15 days' notice of the time and place of such hearing shall be published in a newspaper of general circulation in such township.

Public notices of the September 30, 1968 special meeting at which the Township was to enact the 1968 Ordinance were published on September 18, 19 and 20, 1968. R.R. at 49a–51a, 61a–63a, 66a–68a. Because these publications afforded fewer than 15 days' notice, they were in violation of Section 2002(b) of the Code.

It is also undisputed that the Township violated Section 1741 of the Code when it failed to properly record the 1990 Ordinance in its official ordinance book subsequent to its enactment. Section 1741 of the Code in effect when the 1990 Ordinance was adopted required that: "ordinances shall be recorded in the ordinance book of the township."[9] Section 610(c) of the MPC, 53 P.S. § 10610(c), provided: "Zoning ordinances and amendments thereto may be incorporated into official ordinance books by reference with the same force and effect as if duly recorded therein." The 1990 Ordinance was neither filed nor incorporated in the Township's official ordinance book.

Having confirmed that there were procedural defects in the enactment of the 1968 and 1990 Ordinances, we must now discern whether those procedural defects were of the type that implicated "notice, due process or other constitutional rights" rendering them void *ab initio*.

■ Section 909.1(a)(2) of the MPC, 53 P.S. § 10909.1(a)(2),[10] and Section 5571(c)(5) of the Judicial Code, 42 Pa.C.S.

---

**8.** Section 2002 was repealed by the Act of July 21, 1968, P.L. 805. Despite the fact of its repeal before the notices were published, neither the parties, the ZHB or the trial court raised the repeal as an issue, perhaps since the ordinance was proposed before that date.

**9.** In 1995, Section 1601 of the Code, 53 P.S. § 66601, replaced Section 1741 of the Code. Section 1601(a) of the Code, 53 P.S. § 66601(a), provides that "failure to record [an ordinance] within the time provided [shall not] be deemed a defect in the process of the enactment or adoption of such ordinance." As a result of the 1995 amendment, "interested parties may not rely upon the failure to record as a basis to assert that no acquiescence to a potentially invalid ordinance oc-

curred." *Geryville Materials, Inc. v. Lower Milford Twp. Zoning Hearing Bd.*, 972 A.2d 136, 142 (Pa.Cmwlth.2009). Before this language was added to Section 1601 in 1995, the Pennsylvania Supreme Court suggested that if an ordinance was not recorded in a township's ordinance book, it was not "on the books" and, therefore, did not provide public notice that would have enabled the public to acquiesce. *Schadler v. Zoning Hearing Bd. of Weisenberg Twp.*, 578 Pa. 177, 190 n. 11, 850 A.2d 619, 627 n. 11 (2004).

**10.** Section 909.1 was added by Section 87 of the Act of December 21, 1988, P.L. 1329. Section 909.1(a)(2) was repealed by the Act of July 4, 2008, P.L. 319.

§ 5571(c)(5),[11] provided as a general rule at the time this challenge was filed, that anyone who wished to challenge the validity of an ordinance on procedural grounds was required to raise his claim within 30 days of the effective date of the ordinance. In *Glen–Gery Corp. v. Zoning Hearing Board of Dover Township*, 589 Pa. 135, 907 A.2d 1033 (2006) (*Glen–Gery* ), the Pennsylvania Supreme Court declared that "a claim alleging a procedural defect affecting notice or due process rights in the enactment of an ordinance may be brought notwithstanding the provisions of Section 909.1(a)(2) and Section 5571(c)(5) because, if proven, the ordinance would be rendered void *ab initio.*" *Glen–Gery*, 589 Pa. at 139, 907 A.2d at 1035.[12] "The doctrine of void *ab initio* is a legal theory stating that a statute held unconstitutional is void in its entirety and is treated as if it had never existed." *Hawk v. Eldred Twp. Bd. of Supervisors*, 983 A.2d 216, 219 n. 1 (Pa. Cmwlth.2009). It serves to invalidate an ordinance from its inception, thereby rendering the statutory time limits set forth in Section 909.1(a)(2) of the MPC and Section 5571(c)(5) of the Judicial Code irrelevant.

The void *ab initio* doctrine applies only to "claims that implicate notice, due process, or other constitutional rights of a party. . . ." *Glen–Gery*, 589 Pa. at 143 n. 5, 907 A.2d at 1037 n. 5. This Court has stated that "statutory notice and publication requirements are to ensure the public's right to participate in the consideration and enactment of municipal land use decisions. In other words, the notice provisions protect procedural due process." *In re McGlynn (McGlynn)*, 974 A.2d 525, 532 (Pa.Cmwlth.2009) (citation omitted). "The fundamental components of procedural due process are notice and opportunity to be heard." *Id.*, 974 A.2d at 531. It requires that the public is notified of impending ordinance changes, and may comment and intervene if they so choose. *Schadler v. Zoning Hearing Bd. of Weisenberg Twp.*, 578 Pa. 177, 850 A.2d 619 (2004).

The Pennsylvania Supreme Court has consistently declared that "statutory steps for enactment of ordinances are *mandatory and nonwaivable. . . .* [and] *must be followed strictly in order for an ordinance to be valid."* *Cranberry Park Assocs. ex rel. Viola v. Cranberry Twp. Zoning Hearing Bd.*, 561 Pa. 456, 461, 751 A.2d 165, 168 (2000) (quoting *Lower Gwynedd Twp. v. Gwynedd Props., Inc.*, 527 Pa. 324, 325, 327, 591 A.2d 285, 286–87 (1991)).

In this case, the public notices of the September 30, 1968 special meeting afforded fewer than 15 days' notice of the adoption of the 1968 Ordinance. In addition, the 1990 Ordinance was neither filed nor incorporated in the Township's official ordinance book. It appears, therefore, that there was substantial evidence to support

**11.** Repealed by the Act of July 4, 2008, P.L. 325.

**12.** This Court explained the General Assembly's response to *Glen–Gery* in *Hawk v. Eldred Twp. Bd. of Supervisors*, 983 A.2d 216 (Pa. Cmwlth.2009). There this Court stated:

In 2008, after *Glen–Gery*, the General Assembly again responded by passing legislation placing time limits on procedural challenges to the adoption of ordinances. *See* 42 Pa.C.S. § 5571.1. . . . This time, the General Assembly incorporated reservations to the unfettered use of the void *ab initio* doctrine contained in *dicta* in [*Schadler v. Zoning Hearing Bd. of Weisenberg Twp.*, 578 Pa. 177, 850 A.2d 619 (2004)] and *Glen–Gery*. Unlike its predecessors, Section 5571.1, which became effective on July 4, 2008, employs a multi-tiered system in which the standards for challenging an ordinance vary depending on the amount of time that has passed since its adoption. *Hawk*, 983 A.2d at 221.

the ZHB's findings that the Township's failure to strictly comply with the public notice provisions of the Code resulted in the denial of due process so as to render the 1968 and 1990 Ordinances void *ab initio*. The trial court, however, reversed the ZHB's decision, holding that the Township's failure to timely publish notice of the 1968 Ordinance and its failure to record the 1990 Ordinance did not rise to the level of a constitutional due process violation, since the Township "accomplished the purposes which underlie those procedures. i.e. sufficient notice of the proposed ordinance to insure an opportunity to be heard and the permanent preservation of the ordinance after it was enacted." *Nockamixon Twp. v. Nockamixon Twp. Zoning Hearing Bd.* (No. 09–02937–33–5, filed May 3, 2010), slip op. at 16.

As for the 1968 Ordinance, the trial court held that although timely notice was not given for the meeting to adopt the 1968 ordinance, meetings and public notice about them were extensive, and the proposed ordinance was available for public inspection. In terms of the 1990 Ordinance, the trial court stated that although it was not recorded in accordance with Section 1741 of the Code, it was separately bound and maintained as a public record by the Township and became part of the Township's code book by virtue of the 2001 Codification. The trial court concluded that "invalidating such longstanding ordinances would cause greater harm to the community than is implicated by enforcement of those ordinances." *Id.* at 17. We agree with the trial court's position, and hold, specifically, that the codification in 2001 cured any defect in the prior recording of the 1990 Ordinance.

In recent years, perhaps due to statutory changes that appear to have softened the result of failure to comply with notice requirements, this Court has declared that "[t]he concept of due process ... is a flexible one and imposes only such procedural safeguards as the situation warrants.... Demonstrable prejudice is a key factor in assessing whether procedural due process was denied." *McGlynn,* 974 A.2d at 532. "[W]here [o]bjectors received all process due and asserted no claim of prejudice or harm," this Court has declined to find that failure to strictly comply with statutory notice provisions renders a local agency's decision void *ab initio.* *Id.* Moreover, this Court recently held in *Hawk:*

> To safeguard the 'due process' rights protected by *Glen–Gery,* 'Notice should be reasonably calculated to inform interested parties of the pending action, and [contain] the information necessary to provide an opportunity to present objections. The form of the notice required depends on what is reasonable, considering the interests at stake and the burdens of providing notice.'

*Hawk,* 983 A.2d 216, 224–25 (quoting *Pennsylvania Coal Mining Ass'n v. Ins. Dep't,* 471 Pa. 437, 452–53, 370 A.2d 685, 692–93 (1977)).

In *Messina v. East Penn Township,* 995 A.2d 517 (Pa.Cmwlth.2010), this Court held that although the procedural requirements of the MPC were violated in the adoption of an ordinance, procedural due process rights of owners were not violated where they had notice of and participated in meetings held regarding the ordinance's adoption. Specifically, this Court, recognizing its holding in *McGlynn,* held that "[g]iven the passage of time after the original adoption of the zoning ordinance and the absence of proof of discernible harm, no denial of due process is evident." *Messina,* 995 A.2d at 536.

Based upon the flexibility that this Court has applied to procedural due process cases in recent years, and because the

2001 Codification cured any defect in the recording of the 1990 Ordinance, we find that public notice was sufficiently given in this case. Because Hanson has participated in the Township's meetings over the years (R.R. at 267a, 307a, 365a–367a, 375a, 388a), and there appears to be no showing of prejudice, we hold that the errors committed by the Township in the enactment of the 1968 and 1990 Ordinances do not implicate notice, due process, or other constitutional rights to the extent necessary to trigger the void *ab initio* doctrine.[13]

This Court notes that Hanson argued that the void *ab initio* doctrine should be applied notwithstanding evidence of actual notice, acquiescence or reliance upon the improperly enacted ordinances. The ZHB in this case addressed the issue of acquiescence only to say that knowledge by Hanson of the 1968 and 1990 Ordinances does not cure the procedural validity challenge. ZHB Op. at 15. The ZHB, therefore, committed an error of law by not addressing this "exception" to the void *ab initio* doctrine.

 Current Pennsylvania law provides: "where an ordinance is defectively enacted but has been 'on the books' ... public notice or acquiescence to the terms of the ordinance could in fact exist so as to preclude application of the doctrine." *Geryville Materials, Inc. v. Lower Milford Twp. Zoning Hearing Bd.*, 972 A.2d 136, 144 (Pa.Cmwlth.2009). In *Geryville*, this Court stated:

> In order to reach a presumption that acquiescence has occurred, the Supreme Court indicated, in dicta in *Glen–Gery*, that the lapse of time of some indefinite amount, coupled with some indication that persons interested in land use in a municipality have obeyed the ordinances

purported to have been enacted, would suffice to support a decision electing not to apply the void ab initio doctrine despite evidence of defects in the enactment process.

*Geryville Materials, Inc.*, 972 A.2d at 143. Clearly, therefore, evidence of acquiescence or reliance is relevant to a procedural challenge to the validity of an ordinance alleging that the challenged ordinance is void *ab initio*.

Accordingly, even if this Court were to find that the doctrine of void *ab initio* applied to the 1968 and 1990 Ordinances, uncontradicted evidence of reliance and acquiescence would be sufficient to preclude application of that doctrine in this case. It is undisputed that the 1968 Ordinance and the 1990 Ordinance have existed for 40 and 18 years respectively. Township residents appeared before the ZHB and testified that they significantly relied on the existence of zoning ordinances in the Township. R.R. at 344a–405a. Some of them acquired their property in the Township on that basis. Furthermore, over the years, the Township considered applications and issued numerous permits relating to the challenged ordinances. R.R. at 335a–357a, 1158a–1170a. In addition, Hanson and its predecessors have availed themselves of and sought changes to the subject ordinances since 1969, including seeking variances and special exceptions, receiving violation notices, and obtaining waivers related to the subject ordinances. R.R. at 435a–1157a.

Based upon the foregoing, the trial court properly reversed the ZHB's decision. The decision of the trial court is, therefore, affirmed.

---

13. In light of this decision, this Court need not address the Township's argument that Hanson's claims are barred by the doctrine of laches.

## ORDER

AND NOW, this 18th day of November, 2010, the May 3, 2010 order of the Court of Common Pleas of Bucks County is affirmed.